UNITED STATES DISTRICT COURT                              C/M
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
MANDELA T. BROCK EL-SHABAZZ,                                   :
                                                               :  **MEMORANDUM**
                                          Plaintiff,           :  **DECISION AND ORDER**
                                                               :
              - against -                                      :  12 Civ. 5044  (BMC)
                                                               :
PATRICIA E. HENRY; SARAH SIEGEL;                               :
DIANE HESSEMAN,                                                :
                                                               :
                                         Defendants.           :
                                                               :
-------------------------------------------------------------- X

**COGAN,** District Judge.

Plaintiff *pro se* asserts claims under 42 U.S.C. § 1983 related to state court proceedings concerning the custody of his son. The Court grants plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a), solely for the purpose of this Order. For the reasons discussed below, the complaint is dismissed.

## BACKGROUND

This action arises out of a child custody dispute before the New York state courts. In May 2012, plaintiff filed a *pro* se petition for a writ of habeas corpus in Family Court in an effort to gain custody of his son who, at that point, had been in the custody of his mother. In support of his petition, plaintiff asserted, among other arguments, that he was the child's primary caregiver, the child wanted to live with him, and the mother was a foreign national who could flee the jurisdiction.

At a subsequent court hearing, defendant Patricia Henry, a Judge of the New York City Family Court, granted the mother's request that plaintiff's visitations with his son had to be supervised. That request was supported by defendant Sarah Siegel, a law guardian assigned to

1

represent the child's interests.  Plaintiff alleges that the supervised visitation order was contrary to New York law because it was not based upon a finding that unsupervised visitation would be detrimental to the child.  Instead, the supervised visitation order was based on the mother's request and made in light of a previous incident in which plaintiff allegedly hit the mother.  Plaintiff specifically notes that Siegel gave no indication that she spoke with the child about issues related to the child's welfare.  Additionally, plaintiff claims that neither Judge Henry nor Siegel addressed the issues in his habeas petition.

Despite the mother's earlier request for supervised visitation, she apparently refused to abide by the Family Court's visitation order because of an unspecified encounter with plaintiff.  During a court hearing on this issue, Judge Henry remarked, "You had an ice-pick," on the record with regard to plaintiff's encounter with the child's mother.  According to plaintiff, Judge Henry should not have made this remark on the record because there was no proof of the encounter and the mother's account was based on information from a third party.  Plaintiff alleged that Judge Henry "exhibited extreme bias and gender discrimination" and colluded with the mother to "basically terminate[] Plaintiff's parental rights."

Still, plaintiff was allowed to visit with his son under the supervision of defendant Diane Hesseman, a social worker under contract with the Family Court.  Plaintiff claims that, in her report, Hesseman "bashed Plaintiff with false allegations" and that she "interfered with [plaintiff's] visit when she knew there was no need to do so."  Because of Hesseman's report, and because plaintiff was seeking custody of his son, Judge Henry required plaintiff to have a mental health evaluation.

As a result of this conduct and other purported irregularities and misstatements, plaintiff asks this Court to vacate a number of orders issued by the Family Court and asserts eight causes

2

of action against defendants for which he seeks money damages. Generally, plaintiff alleges that he was denied due process in connection with the custody proceedings and was deprived of his liberty interest in his relationship with and custody over his child. Plaintiff asserts five causes of action for money damages against Judge Henry, some of which are explicitly asserted as claims under § 1983. Specifically, plaintiff challenges Judge Henry's conduct of the custody proceeding – including her rulings, her references to allegedly inappropriate information on the record, her failure to acknowledge plaintiff's arguments, her encouragement that plaintiff accept legal representation, and her refusal to consider plaintiff's *pro se* petitions unless he first cleared them with his court-appointed attorney –and claims that this misconduct resulted in the improper denial of his parental rights. Additionally, plaintiff asserts two causes of action under § 1983 against Siegel, one for violation of her oath based on her conspiring to deprive plaintiff of his rights, and a second for bias and collusion with the child's mother. Finally, plaintiff asserts a § 1983 claim against Hesseman for bias and unethical conduct based on the contents of Hesseman's report on plaintiff's visitation with his son and Hesseman's alleged stalking of plaintiff's family.

## **DISCUSSION**

Under 28 U.S.C. § 1915(e)(2)(B), a district court should dismiss an *in forma pauperis* action where it is satisfied that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

In determining whether a plaintiff states a claim on which relief may be granted, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations in the complaint[.]" Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 124 (2d Cir. 2010) (citing

Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1974 (2009)). A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). It is axiomatic that *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys and the Court is required to read plaintiff's *pro se* complaint liberally and interpret it as raising the strongest arguments it suggests. Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197 (2007); Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185 (2d Cir. 2008).

Here, plaintiff invokes the Court's federal question jurisdiction by asserting claims, explicitly and implicitly, under § 1983. In order to state a claim under § 1983, "two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994). Most of plaintiff's claims are typical § 1983 claims insofar as seek money damages for the alleged deprivation of a federal rights by purported state actors. But since plaintiff also asks this Court to vacate certain Family Court orders, his claims also must be interpreted as challenges to the rulings made in the underlying state court custody dispute. Insofar as plaintiff seeks review and vacatur of the Family Court's rulings, his claims are barred by certain comity-based exceptions to the federal courts' exercise of their subject matter jurisdiction, namely the domestic relations exception and the Rooker-Feldman doctrine. Insofar as plaintiff asserts claims for monetary damages, his claims are barred because he has sued defendants who cannot be held liable under § 1983, either because they are immune from liability or because they cannot be considered state actors for the purposes of § 1983.

4

I.      **The Domestic Relations Exception**

Although the relationship between a parent and his child is constitutionally protected, Neustein v. Orbach, 732 F. Supp. 333 (E.D.N.Y. 1990), the Supreme Court has long held that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12, 124 S. Ct. 2301, 2309 (2004) (quoting In re Burrus, 136 U.S. 586, 10 S. Ct. 850 (1890)). See also Am. Airlines, Inc. v. Block, 905 F.2d 12, 14 (2d Cir. 1990) ("[E]ven if subject matter jurisdiction lies over a particular matrimonial action, federal courts may properly abstain from adjudicating such actions in view of the greater interest and expertise of state courts in this field."). This domestic relations exception "divests the federal courts of power to issue divorce, alimony, or child custody decrees." Ankenbrandt v. Richards, 504 U.S. 689, 703, 112 S. Ct. 2206, 2215 (1992). Consequently, "[f]ederal courts will dismiss actions aimed at changing the results of domestic proceedings, including orders of child custody." Rabinowitz v. New York, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004).

Here, the gravamen of plaintiff's claims is the custody of his child – a matter encompassed by the domestic relations exception. Indeed, plaintiff explicitly requests that the Court vacate a state court order of protection and a state court order suspending plaintiff's habeas corpus petition. If the Court were to consider these requests, it would have to wade into a domestic dispute and review state court custody determinations – a role that is wholly inappropriate for a federal court. See Neustein, 732 F. Supp. at 339 ("If, however, in resolving the issues presented, the federal court becomes embroiled in factual disputes concerning custody and visitation matters, the action must be dismissed.").

The fact that plaintiff styles his allegations as claims for money damages based on constitutional torts under § 1983 does not place this action outside of the domestic relations exception. For example, plaintiff alleges that Judge Henry "effectively 'terminated' Plaintiff's 'parental rights'" improperly because, among other things, she (1) ignored or disregarded certain evidence as well as the issues presented in plaintiff's petition, (2) improperly referred to certain matters on the record, and (3) ordered supervised visitation without the necessary factual finding. The law is clear, though, that a "[p]laintiff may not rewrite his domestic dispute as a tort claim, or a civil rights claim by simply requesting only monetary damages." McKnight v. Middleton, 699 F. Supp. 2d 507, 519-20 (E.D.N.Y. 2010) (internal alterations, citations, and quotation marks omitted). "No matter how artfully [p]laintiff has pleaded these claims," when "[a]t heart he is complaining of the state court custody proceedings . . . his claims are indistinct from the domestic dispute." Id. at 519. Such is the case here. Plaintiff's claims against all defendants, though largely framed as § 1983 claims, are substantive challenges to the correctness of defendants' rulings, reports, and statements in the state custody proceedings. But plaintiff may not use § 1983 as a vehicle to circumvent the domestic relations exception and re-litigate the underlying child custody dispute.

## II.     The *Rooker-Feldman* Doctrine

"Where a federal suit follows a state suit, the former may be prohibited by the so-called Rooker-Feldman doctrine in certain circumstances." Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 83 (2d Cir. 2005). See also Lipin v. Nat'l Union Fire Ins. Co., 202 F. Supp. 2d 126, 133 (S.D.N.Y. 2002) ("The Rooker-Feldman doctrine is a judicially-created doctrine of abstention based on principles of comity."). In the wake of the Supreme Court's decision in Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 125 S. Ct. 1517 (2005), the

Second Circuit has limited the application of the Rooker-Feldman doctrine to cases satisfying four requirements:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain [ ] of injuries caused by [a] state-court judgment [.] Third, the plaintiff must invite district court review and rejection of [that] judgment [ ]. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced – i.e., Rooker–Feldman has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

Hoblock, 422 F.3d at 85 (internal quotation marks omitted).

Here, the Rooker-Feldman requirements are satisfied. Plaintiff complains of adverse custody rulings in state Family Court, as well as the injuries he sustained as a result, and he asks this Court to vacate a number of state court rulings. Although it appears that certain proceedings in the Family Court may still be ongoing, the orders that plaintiff challenges have already been issued by the Family Court. In circumstances such as these, courts recognize that the Rooker-Feldman doctrine "bars a district court from reviewing a family court's determinations regarding custody, neglect and visitation where those issues have been decided after providing the plaintiff a full and fair opportunity to litigate those issues." Arena v. Dep't of Soc. Servs., 216 F. Supp. 2d 146, 152 (E.D.N.Y. 2002) (citing Phifer v. City of New York, 289 F.3d 49 (2d Cir. 2002)). Plaintiff has been afforded an adequate opportunity to litigate the custody of his son in the Family Court; Judge Henry even urged plaintiff to accept court-appointed representation in light of the complexity of his custody case.

The Second Circuit's decision in Green v. Mattingly, 585 F.3d 97 (2d Cir. 2009), does not suggest a contrary result. In Green, "[t]he only conceivable 'judgment' against plaintiff – the temporary removal of her child – ha[d] already been undone" by the Family Court. Id. at 102. Here, on the other hand, the custody rulings about which plaintiff complains are apparently still

7

in force. Therefore, to the extent plaintiff asks this Court to review and vacate the orders of the Family Court, those claims are barred by the Rooker-Feldman doctrine.

### III.     Immunity from § 1983 Liability

As discussed, plaintiff also asserts allegations under § 1983 concerning the inappropriate deprivation of his due process, equal protection and, possibly, privacy rights. For example, plaintiff claims that Judge Henry ignored the arguments in his habeas petition, required plaintiff to clear his submissions to the court with his appointed attorney prior to submitting them, and pressured him into accepting a court-appointed attorney. Further, plaintiff alleges that Siegel exhibited gender bias and colluded with the child's mother, while Hesseman improperly conducted surveillance of plaintiff and his family.

Even if these allegations constitute claims under § 1983 – which the Court assumes but does not decide – plaintiff is not able to assert them against the particular defendants he has sued. With regard to Judge Henry, "[i]t is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." McKnight, 699 F. Supp. 2d at 523 (citing Bliven v. Hunt, 579 F.3d 204 (2d Cir. 2009)). "[T]his immunity acts as a complete shield to claims for money damages." Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999) (citations omitted). Judges remain immune even when "the action [the judge] took was in error, was done maliciously, or was in excess of his authority[.]" Fields v. Soloff, 920 F.2d 1114, 1119 (2d Cir. 1990). The only exceptions to this rule are where the judge has engaged in actions outside his judicial capacity or has engaged in judicial actions "in the complete absence of all jurisdiction." McKnight, 699 F. Supp. 2d at 523 (quoting Mireles v. Waco, 502 U.S. 9, 112 S. Ct. 286 (1991)). Here, Judge Henry unquestionably had jurisdiction over plaintiff's custody proceedings, see generally N.Y. Fam. Ct. Act § 115, and all of plaintiff's allegations relate to acts that Judge

8

Henry performed within the scope of her judicial capacity. Therefore, plaintiff may not maintain any claims under § 1983 for money damages against Judge Henry.

Likewise, Hesseman is immune from plaintiff's § 1983 claims. Under the doctrine of quasi-judicial immunity, "[a] private actor may be afforded the absolute immunity ordinarily accorded judges acting within the scope of their jurisdictions if his role is functionally comparable to that of a judge or if the private actor's acts are integrally related to an ongoing judicial proceeding." Mitchell v. Fishbein, 377 F.3d 157, 172 (2d Cir. 2004) (internal citations and quotation marks omitted). In McKnight, 699 F. Supp. 2d at 527-28, the court considered "a licensed clinical social worker appointed by the Family Court to conduct therapeutic supervised visitations in Plaintiff's child custody dispute" and who provided a written report to the Family Court to be entitled to quasi-judicial immunity. Here, the Family Court ordered that Hesseman supervise plaintiff's visitation with his child and Hesseman submitted a report concerning the visitation and other issues to Judge Henry. Additionally, plaintiff's claim that Hesseman "followed, stalked, and harassed" his family is unavailing. Hesseman was charged by the Family Court with supervising plaintiff's visits with his son. Hesseman's observation of plaintiff, his son, and the mother outside of Hesseman's office was plainly within the scope of her court-ordered duties.

Finally, although both of plaintiff's causes of action against Siegel allege that she acted under "color of law," established precedent provides that law guardians appointed by the court are not considered state actors for purposes of § 1983. See Arena, 216 F. Supp. 2d at 155. See also Elmasri v. England, 111 F. Supp. 2d 212, 221 (E.D.N.Y. 2000) ("[G]uardians ad litem, although appointed by the court, exercise independent professional judgment in the interests of

the clients they represent and are therefore not state actors for the purposes of Section 1983."). Consequently, plaintiff cannot maintain either of his causes of action against Siegel.

Rule 15(a)(2) of the Federal Rules of Civil Procedure directs that a court "should freely give leave [to amend a pleading] when justice so requires." Nonetheless, leave to amend may be denied where amendment would be futile, that is "where it is beyond doubt that the plaintiff can prove no set of facts in support of his amended claims." Pangburn v. Culberston, 200 F.3d 65, 70-71 (2d Cir. 1999). Here, plaintiff has brought suit against defendants who are immune and has asserted claims over which federal courts decline to exercise jurisdiction. Therefore, the Court finds that any amendment to plaintiff's complaint would be futile.

## CONCLUSION

Accordingly, plaintiff's complaint [1] is dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917 (1962).

**SO ORDERED.**                    signed electronically/Brian M. Cogan

                                   U.S.D.J.

Dated: Brooklyn, New York
       October 29, 2012